**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **THAYMES M. WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:14-cv-00605** |
| | ) | **Judge Campbell / Knowles** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record.

Docket No. 12.  Defendant has filed a Response, arguing that the decision of the Commissioner

was supported by substantial evidence and should be affirmed.  Docket No. 15.  Plaintiff has

filed a Reply.  Docket No. 18.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

be AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed his applications for DIB and SSI on September 10, 2010, alleging that he

had been disabled since January 10, 2010, due to hypertension, diabetes, and congestive heart failure.  Docket No. 10, Attachment ("TR"), TR 147, 151, 171.  Plaintiff's applications were denied both initially (TR 60, 61) and upon reconsideration (TR 62, 63).  Plaintiff subsequently requested (TR 85-86, 95-99) and received (TR 28) a hearing.  Plaintiff's hearing was conducted on August 29, 2012, by Administrative Law Judge ("ALJ") Shannon Smith.  TR 28-57.  Plaintiff and vocational expert ("VE"), Kenneth Anchor, appeared and testified.  *Id.*

On September 14, 2012, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 11-23.  Specifically, the ALJ made the following findings of fact:

> 1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.
>
> 2.  The claimant has not engaged in substantial gainful activity since January 22, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairment [*sic*]: congestive heart failure and morbid obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).  He can lift 20 pounds frequently, and carry ten to 20 pounds frequently.  He can sit for six hours in a day, and stand and/or walk for four hours in a day.  He would need to alternate sitting, standing, and/or walking such that there would be no more than two

hours of sitting at a time, and an hour of standing and/or walking total at a time. He can squat only occasionally. He cannot climb or be exposed to unprotected heights. He must avoid concentrated exposure to temperature extremes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 30, 1960 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 22, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 16-22.

On November 16, 2012, Plaintiff timely filed a request for review of the hearing decision.

TR 10. On December 31, 2013, the Appeals Council issued a letter declining to review the case

(TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner.

This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

If the Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the

extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the

administrative hearing process. *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369

(6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence

exists in the record to support the Commissioner's decision, and (2) whether any legal errors

were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human

Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept

as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir.

1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been

further quantified as "more than a mere scintilla of evidence, but less than a preponderance."

*Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consol. Edison Co. v.

N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner

if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

(1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 CFR §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.

---

[1] The Listing of Impairments is found at 20 CFR, Pt. 404, Subpt. P, App. 1.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ failed to: (1) include all relevant limitations in rendering her RFC determination and therefore erroneously determined that Plaintiff was limited to light work with additional limitations; (2) consider Plaintiff's congestive heart failure under the criteria of Listing 4.02; and (3) properly evaluate Plaintiff's credibility.  Docket No. 12-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is

overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery*

*v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and

immediately award benefits if all essential factual issues have been resolved and the record

adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human*

*Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir.

1994).

## 1. Residual Functional Capacity ("RFC")

Plaintiff argues that the ALJ's finding that he could perform a range of light work with

some additional limitations "is contrary to the medical evidence and fails to account for all of the

limitations resulting from his severe impairments." Docket No. 12-1, p. 7-8. Specifically,

Plaintiff contends that his severe impairments, including chronic systolic congestive heart failure,

accelerated hypertension, diabetes mellitus type 2, neuropathy, chronic back pain, chronic kidney

disease, and knee pain, in conjunction with the exacerbation of these impairments caused by his

morbid obesity, "certainly warrant a limitation to a maximum of sedentary work." *Id.*, p. 8.

Plaintiff argues that the ALJ in fact acknowledged his testimony regarding his ability to do

sedentary type work, and provided sedentary jobs as part of her step five findings denying

Plaintiff's claim. *Id.*, *citing* TR 22. Plaintiff asserts that Rule 201.10 of the Medical-Vocational

Guidelines directs a finding of "disabled" if a claimant has a sedentary RFC finding as of his/her

fiftieth birthday, such that the ALJ should have found him disabled. *Id.* Plaintiff additionally

argues that the ALJ failed to include all of his severe limitations and opined restrictions in her

RFC determination, failed to resolve inconsistencies between her RFC finding and the opinions she specifically relied upon, and also failed to perform the requisite "function-by-function" assessment. *Id.*, p. 9-10.

Defendant responds that Plaintiff's argument that the ALJ should have restricted him to sedentary type work, which would have resulted in a finding of "disabled" after his fiftieth birthday, is speculative. Docket No. 15, p. 12. Defendant contends that Plaintiff points to no medical opinion that supports such limitation, but instead "merely lists various medical findings in the record and concludes that these findings 'certainly warrant' a limitation to sedentary work." *Id.* Defendant also asserts that, in response to proper hypothetical questions rendered by the ALJ, the VE identified both light and sedentary jobs that would be within the hypothetical claimant's RFC. *Id.*, p. 13. Defendant argues that because the ALJ ultimately determined that Plaintiff retained the RFC for light work with additional limitations, she relied upon the VE's identified light jobs of office helper, cashier, and table worker, while also noting the existence of additional sedentary jobs. *Id.*, *citing* TR 22, 53-55.

Defendant additionally argues that the SSR 96-8p does not demand that an ALJ explicitly perform a "function-by-function" assessment in the manner Plaintiff suggests, but rather, requires that an RFC assessment include a thorough discussion of the medical and non-medical evidence, a narrative discussion regarding Plaintiff's ability to work, a resolution of inconsistencies, and a "logical explanation" of the effects of his symptoms on his ability to work. *Id.*, p. 11-12.

As to Plaintiff's argument that the ALJ failed to account for the "undisputed" limitations provided by State agency physicians, Defendant responds that the ALJ properly evaluated and considered the opinions of the State agency physicians and gave them "no weight" concerning

findings that congestive heart failure was not a severe impairment, while giving "great" or

"significant" weight to their other opinions.  *Id.*, p. 9, *citing* TR 20.  Defendant further responds

that the ALJ's RFC determination was based upon the overall evidence of record and that the

ALJ "never stated that any of the State agency opinions would be wholly adopted."  *Id.,* p. 10.

Plaintiff, in his Reply, contends that "it is certainly the logical conclusion from the

evidence" that he would be "disabled" after his fiftieth birthday.  Docket No. 18, p. 1.  Plaintiff

further replies that the ALJ "omitted significant limitations and included limitations which were

contrary to the evidence and medical opinions," and argues that "it is likely that these additional

limitations would result in an effective limitation to sedentary work if included in the

hypothetical question forming the basis of the vocational expert's testimony at step five."  *Id.*, p.

1-2.

Plaintiff additionally replies:

> . . . the ALJ specifically gave "[g]reat weight" to the opinion of Dr.
> Davis, finding it consistent with the medical record, and stating
> that "[h]is opinion is reflected in the above residual functional
> capacity."  Tr. 20.  Dr. Davis specifically stated that [Plaintiff]
> cannot stand and/or walk for an hour uninterrupted, but is limited
> to standing and walking less than one hour at one time.  Tr. 268.
> Nonetheless, the ALJ then inexplicably made the contradictory
> finding that [Plaintiff] is capable of standing and/or walking one
> hour total at one time.  Tr. 18.  As such, Dr. Davis' opinion was
> not reflected in the ALJ's RFC finding, and the ALJ's finding is
> plainly contradictory to this opinion.  This is significant, as this
> further limitation may likely result in [Plaintiff] being limited to
> sedentary work, which warrants a finding of "disabled."
>
> Similarly, the ALJ specifically gave "significant weight" to Dr.
> Misra, but excluded the limitations to only occasional crouching
> and kneeling, and only frequently stooping, balancing, and
> crawling.  Tr. 18, 20, 272.  Furthermore, the ALJ failed to explain
> these inconsistencies.  Nevertheless, the ALJ failed to address or

account for this significant restriction in her decision. This is extremely significant, as the ALJ gave "significant weight" to Dr. Misra (the State agency medical consultant) and relied upon this opinion in support of her findings and decision. Tr. 20. Moreover, this is not a question of the "format preferred by Plaintiff," as the Defendant argues. Def. Br. At 11. Rather, it is a matter of the ALJ's omission of significant limitations which are undisputed and well-supported by the evidence, even by the ALJ's own findings. See Tr. 20.

*Id.*, p. 2-3.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC for light work with the following limitations:

He can lift 20 pounds frequently, and carry ten to 20 pounds frequently. He can sit for six hours in a day, and stand and/or walk for four hours in a day. He would need to alternate sitting, standing, and/or walking such that there would be no more than two hours of sitting at a time, and an hour of standing and/or walking total at a time. He can squat only occasionally. He cannot

climb or be exposed to unprotected heights. He must avoid
concentrated exposure to temperature extremes.

TR 18.

Turning first to Plaintiff's contention that the ALJ failed to perform a function-by-

function assessment in accordance with SSR 96-8p, as can be seen, the ALJ specifically included

the following functional limitations in her RFC determination: (1) Plaintiff can lift 20 pounds

frequently; (2) Plaintiff can carry 10 to 20 pounds frequently; (3) Plaintiff can sit for 6 hours in a

day; (4) Plaintiff can stand and/or walk for 4 hours in a day; (5) Plaintiff would need to alternate

sitting, standing, and/or walking such that there would be no more than 2 hours of sitting at a

time, and 1 hour of standing and/or walking total at a time; (6) Plaintiff can squat only

occasionally; (7) Plaintiff cannot climb; (8) Plaintiff cannot be exposed to unprotected heights;

and (9) Plaintiff must avoid concentrated exposure to temperature extremes. *Id.* Moreover, as

will be discussed in greater detail below, the ALJ's decision narrative addresses the evidence and

resulting functional limitations. *See* TR 16-22.

While Plaintiff argues that the ALJ committed error because she did not explicitly

conduct a function-by-function assessment that discusses each function separately, the Sixth

Circuit has not held that such is required. "Although a function-by-function analysis is desirable,

SSR 96–8p does not require ALJs to produce such a detailed statement in writing," as there is a

difference "between what an ALJ must consider and what an ALJ must discuss in a written

opinion." *Beason v. Comm'r of Soc. Sec.*, No. 1:13-CV-192, 2014 WL 4063380, at *13 (E.D.

Tenn. Aug. 15, 2014) (*quoting Delgado*, 30 F. App'x at 547-48). Significantly, SSR 96–8p

states that the ALJ must *consider* each function separately; it does not state that the ALJ must

*discuss* each function separately in the narrative of the decision. Not only did the ALJ in the case at bar explicitly state that she had considered the entire record carefully, but as will be demonstrated in the statements of error below, the ALJ articulated her reasoning throughout her decision. Plaintiff's contention on this point fails.

With regard to Plaintiff's contention that the ALJ failed to resolve inconsistencies between her RFC determination and the medical opinions upon which she specifically relied, the Code of Federal Regulations addresses the evaluation of medical opinion evidence as follows:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.

The better an explanation a source provides for an opinion, the more weight we will give that opinion. . . .

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

20 CFR § 416.927(d) (emphasis added). *See also* 20 CFR § 404.1527(d).

The ALJ must articulate the reasons underlying her decision to give a medical opinion a specific amount of weight.[2] *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the medical opinion and the reasons for that weight. SSR 96-2p. When opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2).

Plaintiff specifically takes issue with the ALJ's perceived acceptance of only part of the opinions of Drs. Davis and Misra, the State agency physicians. The ALJ discussed those

---

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

opinions as follows:

> Great weight is given to the opinion of the consultative examiner, Dr. Bruce Davis, because it is consistent with the medical record (2F). Dr. Davis is an acceptable medical source and based his opinion on an examination of the claimant. His opinion is reflected in the above residual functional capacity (2F at 3). His opinion is generally consistent with the findings of the State agency consultant, Dr. Reeta Misra, who based her opinion on a review of the medical evidence, and whose opinion is given significant weight (3F).

> Giving the claimant all the benefit of the doubt, the undersigned gives no weight to the State agency opinions that the claimant's congestive heart failure is not a severe impairment (5F and 6F).

TR 20.

Plaintiff argues that the ALJ gave significant weight to Dr. Misra's opinion, but failed to address or account for Dr. Misra's opined limitation that Plaintiff could only occasionally crouch and kneel, but could frequently stoop, balance, and crawl. Docket No. 12-1, p. 10, *citing* TR 272. Plaintiff additionally argues that, although the ALJ found that Plaintiff was capable of standing and/or walking for 1 hour total at a time, the ALJ accorded great weight to Dr. Davis' opinion, which included a restriction that Plaintiff could not stand and/or walk for 1 hour uninterrupted, and would be limited to standing and/or walking for less than 1 hour at a time. *Id.*, *citing* TR 268.

As an initial matter, Plaintiff misreads the ALJ's finding regarding his ability to stand/walk at one time. The ALJ actually stated in relevant part: "He would need to alternate sitting, standing, and/or walking such that there would be *no more than* . . . an hour of standing and/or walking total at a time." TR 18. Thus, the ALJ's finding is congruent with Dr. Davis'

15

opinion; Plaintiff's argument on this point is misplaced.

Moreover, although Plaintiff essentially contends that an ALJ must wholly accept or reject a medical opinion, Plaintiff cites no authority for such a proposition, and no such requirement exists.  As has been discussed, the ALJ must consider the evidence of record in its entirety and reach a reasoned decision; the ALJ must articulate the reasons underlying her decision; those reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight she accorded to the medical opinions and the reasons for that weight.  When opinions are inconsistent with each other or with other evidence of record, however, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner.  20 CFR § 416.927(e)(2).

In the instant action, the ALJ accorded great weight and significant weight to the aspects of the opinions of Drs. Davis and Misra that were consistent with, and supported by, the evidence of record.  In determining which limitations were consistent with, and supported by, the evidence of record, the ALJ considered, *inter alia*, Plaintiff's testimony and subjective complaints; his application, disability reports, and medications; his medical records from Baptist Hospital and from University of Tennessee Medical Center and Clinic; and the State agency medical consultant opinions of Dr. Bruce Davis, Dr. Reeta Misra, Dr. Marvin Cohn, and Dr. Charles Settle.  TR 16-21, *citing* TR 28-57, 234-65, 266-69, 270-78, 279-87, 288-91, 292, 293-98, 299-315.  While Plaintiff is correct that the ALJ did not accept or specifically address Dr. Misra's opined limitation that Plaintiff could only occasionally crouch and kneel, but could frequently stoop, balance, and crawl, the ALJ was not required to accept or incorporate those limitations into her RFC because she explicitly found that Plaintiff's back and knee pain were not severe

16

impairments.  TR 16.  In so finding, the ALJ explained:

> Regarding the claimant's alleged back and knee pain, he did have a diagnosis of back arthritis from the consultative examiner (2F at 3). However, there were no diagnostic studies of the back or knee, and he was not on anti-arthritic or prescription-strength pain medications (1F, 4F, and 8F).  He was recommended to take over-the-counter Aleve (4F at 7).  On March 18, 2010, although he was complaining of back pain and numbness in his right leg, his spine was negative for posterior tenderness (4F at 6-7).  His extremities consistently appeared normal (4F and 8F).  When there was lower extremity edema, its severity was "trace" (4F at 5 and 8F at 5).  His neurological examination showed no motor weakness, and normal deep tendon reflexes (8F at 16).  On December 6, 2011 he was negative for back pain, joint pain, and muscle weakness (8F at 8). His consultative examination of June 8, 2010 showed lower back pain with slow position changes, incomplete squatting, and knee crepitus.  However, he showed normal range of motion in his knee, thoracolumbar spine and in his hips.   He had a normal gait and gait maneuvers.  His neurological examination was normal and his straight leg-raising tests were negative (2F at 2).

TR 17.

Because the ALJ's  determination that Plaintiff "would need to alternate sitting, standing, and/or walking such that there would be *no more than* . . . an hour of standing and/or walking total at a time," is essentially congruent with Dr. Davis' opinion that Plaintiff would be limited to standing and/or walking for less than 1 hour at a time, because the ALJ found Plaintiff's knee and back pain to be non-severe impairments such that she did not have to accept Dr. Misra's postural limitations on Plaintiff's ability to crouch and kneel, and because, as will be discussed in greater detail herein, the ALJ considered and discussed the evidence of record, Plaintiff's contentions regarding the ALJ's treatment of the medical opinion evidence fails.

Turning to Plaintiff's contention that his allegedly severe impairments, including chronic

systolic congestive heart failure, accelerated hypertension, diabetes mellitus type 2, neuropathy, chronic back pain, chronic kidney disease, and knee pain, in conjunction with the exacerbation of these impairments caused by his morbid obesity, "certainly warrant a limitation to a maximum of sedentary work," the ALJ in the case at bar, in fact, determined that only Plaintiff's congestive heart failure and morbid obesity constituted severe impairments.  TR 16.  Explaining why Plaintiff's other alleged impairments were non-severe, the ALJ stated:

> Great weight is given to the opinions of the State agency consultants that the claimant's hypertension, diabetes mellitus, and back and knee pain are non-severe impairments (5F and 6F). The claimant testified that he had not been able to return to work due to breathing problems.  He reported that he could not stand for long because of back pain, which would come and go.

> Regarding the claimant's alleged back and knee pain, he did have a diagnosis of back arthritis from the consultative examiner (2F at 3).  However, there were no diagnostic studies of the back or knee, and he was not on anti-arthritic or prescription-strength pain medications (1F, 4F, and 8F).  He was recommended to take over-the-counter Aleve (4F at 7).  On March 18, 2010, although he was complaining of back pain and numbness in his right leg, his spine was negative for posterior tenderness (4F at 6-7).  His extremities consistently appeared normal (4F and 8F).  When there was lower extremity edema, its severity was "trace" (4F at 5 and 8F at 5).  His neurological examination showed no motor weakness, and normal deep tendon reflexes (8F at 16).  On December 6, 2011 he was negative for back pain, joint pain, and muscle weakness (8F at 8).  His consultative examination of June 8, 2010 showed lower back pain with slow position changes, incomplete squatting, and knee crepitus.  However, he showed normal range of motion in his knee, thoracolumbar spine and in his hips.  He had a normal gait and gait maneuvers.  His neurological examination was normal and his straight leg-raising tests were negative (2F at 2).

> Regarding the claimant's alleged diabetes mellitus type II, his HA1c stayed between 6.2 and 7.5 (4F at 1-2 and 8F at 1).  On February 12, 2010, it was reported that the claimant had neuropathy in his legs that was "probably related to his diabetes" (4F at 8-9).  His diabetes was described as asymptomatic on

March 18, 2010 and September 23, 2010 (4F at 1 and 6). His diabetes was always listed as "without mention of complication" (4F and 8F).

Regarding the claimant's alleged hypertension, the claimant's blood pressure was generally normal or mildly high (4F at 2, 5, 6, 8 and 8F at 6, 8, 10, 12). His blood pressure at his consultative examination was normal at 126/90 (2F at 2). His hypertension was described as asymptomatic on March 18, 2010 and September 23, 2010 (4F at 1 and 6). On December 16, 2010, his blood pressure was moderately high (8F at 15). However, it was back to normal on March 24, 2011 (8F at 13). On March 6, 2012, the claimant's blood pressure reach 190/110 (8F at 5). However, he reported increased stress in his life, he had gained 22 pounds in the past two months, and he had not taken blood pressure medication for two days. It was noted that he was normally well-controlled (8F at 4). By June 5, 2012, his blood pressure was only moderately high (8F at 2). It was noted that he had not been taking his medications as prescribed (8F at 1).

Regarding the claimant's respiratory impairment, he complained of some shortness of breath during the relevant period (4F at 1 and 8F at 11). On June 16, 2011, it was noted that his shortness of breath was at baseline and not limiting his activity. He was running on a treadmill for exercise (8F at 11). However, his lungs were generally clear to auscultation (4F and 8F). His spirometry report from November 5, 2010 showed no clear-cut obstructive defect by "classic criteria" but it was reported his low lung volumes could be masking a mild obstructive defect. There was a mild restrictive defect with normal corrected diffusion capacity and normal oxygen saturation on room air (7F at 5-6). He had clear breath sounds at his consultative examination (2F at 2). He had no diagnosis of a lung impairment (4F and 8F).

The claimant's physical examinations showed normal range of motion in his spine and knee, and he had negative straight leg-raising tests. His diabetes and hypertension were generally "asymptomatic" per his doctor's treatment notes. His respiratory impairment did not limit his activities. For these reasons, and others described above, the undersigned finds these impairments non-severe.

TR 16-17.

As can be seen, the ALJ considered the additional impairments Plaintiff alleges to be "severe," but ultimately found that they did not constitute severe impairments. As can also be seen, the ALJ explained her rationale for so doing and supported that rationale with evidence from the record. The ALJ properly evaluated Plaintiff's impairments, both severe and non-severe. Because the ALJ properly evaluated Plaintiff's impairments and found all but Plaintiff's congestive heart failure and morbid obesity to be non-severe, the ALJ neither had to accept nor incorporate those non-severe limitations into her RFC determination, nor find that Plaintiff would be restricted to sedentary work. Rather, the ALJ properly considered the medical and testimonial evidence of record and determined that Plaintiff retained the RFC for light work with additional limitations. Plaintiff's argument on this point fails.

**2. Listing 4.02**

Plaintiff argues that the ALJ failed to sufficiently consider or evaluate Listing 4.02. Docket No. 12-1, p. 11. Specifically, Plaintiff contends that the ALJ "failed to provide any analysis or explanation whatsoever regarding [her] completely conclusory finding" that Listing 4.02 had not been met "because there is no evidence that the claimant had persistent symptoms of heart failure which very serious [*sic*] limited his ability to independently initiate, sustain, or complete activities of daily living." *Id.*, *citing* TR 18. Plaintiff asserts that "significant evidence" demonstrates that his congestive heart failure meets Listing 4.02, such that the ALJ's decision is unsupported by substantial evidence. *Id.*

Defendant responds that Plaintiff failed to satisfy his burden of showing that he met the requirements from *both* subparagraph A and subparagraph B of Listing 4.02, and further failed to establish that he met the durational requirements of the Listing. Docket No. 15, p. 5-7.

Defendant contends that the ALJ sufficiently explained that Plaintiff did not meet Listing 4.02 because he did not establish that his symptoms met subparagraph B of the Listing. *Id.* Defendant adds, "Plaintiff's argument does not actually explain how the record supports [his] contention that he met any of the Part B findings in the listing." *Id.*, p. 6. Defendant maintains, "An impairment that satisfies only some of the criteria does not qualify, regardless of severity." *Id.*, p. 7, *citing Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Defendant notes that both the impairment and the inability to work must last 12 continuous months. *Id., citing Barnhart v. Walton*, 535 U.S. 212 (2002).

Plaintiff, in his Reply, argues that although Defendant concedes that Plaintiff meets subparagraph A of Listing 4.02, the evidence disputes Defendant's contention that Plaintiff does not meet subparagraph B of the Listing. Docket No. 18, p. 3-4, *referencing* TR 267-68, 279, 282, 283, 286-87, 311-12, 313-14. Plaintiff replies that the evidence cited "certainly shows" "persistent" symptoms under the subparagraph B criteria, that were "clearly not" "controlled." *Id.* Plaintiff replies:

> While notes form June 2011 and December 2011 show some improvement, he was again having intermittent shortness of breath, swelling and edema (also noted on objective exam), bloating, and muscle weakness of the bilateral lower extremities by March 2012. Tr. 302–303. Finally, in June 2012, June 2012 [*sic*], he reported more difficulties affording his medications and lab work, as well as some shortness of breath, and his blood pressure was quite high, at 160/106. Tr. 299-300.

*Id.*, p. 4.

Plaintiff maintains, therefore, that this evidence is consistent with, and supports, his allegations, which he contends are also consistent with the subparagraph B criteria of Listing 4.02, such that the ALJ's finding that he did not meet the subparagraph B requirements cannot stand. *Id.*

21

With regard to Listing 4.02, Congestive Heart Failure ("CHF"), the Code of Federal

Regulations states in relevant part:

2. What evidence of CHF do we need?

*a. Cardiomegaly or ventricular dysfunction must be present and demonstrated by appropriate medically acceptable imaging, such as chest x-ray, echocardiography (M–Mode, 2–dimensional, and Doppler), radionuclide studies, or cardiac catheterization.*

(i) Abnormal cardiac imaging showing increased left ventricular end diastolic diameter (LVEDD), decreased EF, increased left atrial chamber size, increased ventricular filling pressures measured at cardiac catheterization, or increased left ventricular wall or septum thickness, provides objective measures of both left ventricular function and structural abnormality in heart failure.

(ii) An LVEDD greater than 6.0 cm or an EF of 30 percent or less measured during a period of stability (that is, not during an episode of acute heart failure) may be associated clinically with systolic failure.

(iii) Left ventricular posterior wall thickness added to septal thickness totaling 2.5 cm or greater with left atrium enlarged to 4.5 cm or greater may be associated clinically with diastolic failure.

(iv) However, these measurements alone do not reflect your functional capacity, which we evaluate by considering all of the relevant evidence. In some situations, we may need to purchase an ETT to help us assess your functional capacity.

(v) Other findings on appropriate medically acceptable imaging may include increased pulmonary vascular markings, pleural effusion, and pulmonary edema. These findings need not be present on each report, since CHF may be controlled by prescribed treatment.

*b. To establish that you have chronic heart failure, your medical history and physical examination should describe characteristic symptoms and signs of pulmonary or systemic congestion or of limited cardiac output associated with the abnormal findings on appropriate medically acceptable imaging. When an acute episode of heart failure is triggered by a remediable factor, such as an arrhythmia, dietary sodium overload, or high altitude, cardiac function may be restored and a chronic impairment may not be*

*present.*

(i) Symptoms of congestion or of limited cardiac output include easy fatigue, weakness, shortness of breath (dyspnea), cough, or chest discomfort at rest or with activity. Individuals with CHF may also experience shortness of breath on lying flat (orthopnea) or episodes of shortness of breath that wake them from sleep (paroxysmal nocturnal dyspnea). They may also experience cardiac arrhythmias resulting in palpitations, lightheadedness, or fainting.

(ii) Signs of congestion may include hepatomegaly, ascites, increased jugular venous distention or pressure, rales, peripheral edema, or rapid weight gain. However, these signs need not be found on all examinations because fluid retention may be controlled by prescribed treatment.

. . .

4. How do we evaluate CHF using 4.02?

a. We must have objective evidence, as described in 4.00D2, that you have chronic heart failure.

*b. To meet the required level of severity for this listing, your impairment must satisfy the requirements of one of the criteria in A and one of the criteria in B.*

20 CFR, Pt. 404, Subpt. P, App. 1, Listing 4.02 (emphasis added).

Addressing whether Plaintiff's congestive heart failure met or medically equaled Listing

4.02, the ALJ stated:

List [*sic*] 4.02 is not met because there is no evidence that the claimant had persistent symptoms of heart failure which very seriously limited his ability to independently initiate, sustain, or complete activities of daily living. There was no evidence of three or more separate episodes of acute congestive heart failure within a consecutive 12-month period. There was no evidence of an inability to perform on an exercise tolerance test at a workload equivalent to five METs or less.

TR 18.

23

In so determining, the ALJ discussed Plaintiff's relevant medical records as follows:

On January 22, 2010, the claimant was admitted to the emergency room complaining of shortness of breath with orthopnea. He was markedly hypertensive, with a blood pressure of 219/154 (lF at 1). His chest x-ray revealed pulmonary edema and "favored" mild congestive heart failure (lF at 2 and 6). His EKG showed moderate concentric left ventricular hypertrophy. There was severe global left ventricular hypokinesis. The ejection fraction was estimated at 25% to 30%. The right ventricle was probably mildly dilated, and both atria were dilated. The mitral valve was mildly echogenic and there were mild mitral regurgitation. The aortic valve was minimally sclerotic. There were mild tricuspid regurgitation with normal right ventricular systolic pressure. Mild pulmonic insufficiency was detected (lF at 31). He reported smoking a half-pack of cigarettes a day for the past 20 years, but stated he had quit three weeks previously. He reported drinking a fifth of gin on the weekends and approximately a 12-pack of beer during the week (lF at 18). He was discharged on January 24, 2010 with prescriptions for Zestril, Coreg, Aspirin, Norvasc, Lasix, and Glucophage (lF at 2).

On February 12, 2010, it was reported that the claimant's congestive heart failure was doing better, though he still had paroxysmal nocturnal dyspnea at night. He was negative for fatigue (4F at 8). On June 17, 2010, it was reported that the claimant's congestive heart failure appeared compensated (4F at 5). The claimant's echocardiogram from March 29, 2011 showed borderline normal left ventricular systolic function, with a left ventricular ejection fraction of 53%. There was moderate concentric hypertrophy. He showed normal right ventricular size with normal function, and a moderately dilated left atrium. The aortic valve was mildly thickened (7F at 1).

On June 6, 2011, it was reported that the claimant had started running on a treadmill and had lost 12 pounds since his last visit. He was negative for chest pain and irregular heartbeat/palpations (8F at 11). He continued to be through the remainder of his medical record (8F at 1-10). On September 13, 2011, the claimant's doctor asked him about joining the weight loss program at the medical center. The claimant was not interested, stating he knew "what needs to be done" (8F at 9). On December 6, 2011, it was reported that he had lost 18 pounds over the past three months due to walking on his treadmill daily and watching what he ate. He reported his energy level had improved (8F at 7).

> On March 6, 2012, it was reported that he had gained back 22
> pounds over the past two months, some of which was due to his
> not taking his Lasix (8F at 4). It was noted that his congestive
> heart failure was normally well controlled (8F at 4). There were a
> couple of references to his not taking his medication as prescribed,
> which led to some edema on one occasion (8F at 1, 4 and 9). On
> June 5, 2012, it was reported that he continued to exercise,
> walking 30 minutes daily three days per week (8F at 1).

TR 19-20.

Beyond discussing Plaintiff's relevant medical records, as has been noted herein, the ALJ

thoroughly reviewed the evidence of record, including Plaintiff's testimony and subjective

complaints; his application, disability reports, and medications; his medical records from Baptist

Hospital and from University of Tennessee Medical Center and Clinic; and the State agency

medical consultant opinions of Dr. Bruce Davis, Dr. Reeta Misra, Dr. Marvin Cohn, and Dr.

Charles Settle. TR 16-21, *citing* TR 28-57, 234-65, 266-69, 270-78, 279-87, 288-91, 292, 293-

98, 299-315. As can also be seen in the quoted passages above, the ALJ discussed Plaintiff's

pain, diabetes, hypertension, and respiratory impairments, and determined that those impairments

were non-severe. Although Plaintiff argues that evidence related to those impairments

demonstrates that his congestive heart failure meets Listing 4.02, the ALJ's consideration of

those impairments and finding that they were non-severe, along with the evidence discussed

above, supports her determination that the evidence does not demonstrate that Plaintiff meets one

of the subparagraph B requirements of Listing 4.02. Plaintiff's contention on this point fails.

### 3. Credibility

Plaintiff argues that the ALJ failed to specify the weight she accorded to his allegations

and testimony, and further failed to provide sufficient basis for rejecting his subjective

allegations.  Docket No. 12-1, p. 13.  Plaintiff asserts that the ALJ's failure to make clear the weight she accorded to Plaintiff's statements or the reasons therefor violates SSR 96-7p and constitutes material error.  *Id.*  Plaintiff contends that the evidence is consistent with, and supports, his subjective complaints, such that they should have been accepted as true.  *Id.*, p. 13-14.

Defendant responds that the ALJ evaluated Plaintiff's credibility in a manner that was consistent with the SSA's regulations and policies.  Docket No. 15, p. 7.  Specifically, Defendant argues that the ALJ properly discounted Plaintiff's credibility based upon the inconsistencies between his allegations and the evidence of record relating to his limitations, the control provided by his medication and treatment, his daily activities, his inconsistent reports concerning whether he required a cane to walk, and inconsistent testimony concerning his ability to work.  *Id.*, p. 8, *citing* TR 20.  Defendant further argues that, contrary to Plaintiff's misunderstanding of the ALJ's discussion, the ALJ did not base her credibility determination of Plaintiff on his ability to exercise for 30 minutes per day, 3 days per week, but rather, noted that fact simply as evidence of the inconsistency within Plaintiff's allegations.  *Id.*, *citing* TR 20, 48, 279, 299.  Defendant also asserts that, contrary to Plaintiff's contention that the ALJ did not explain her reasons for discounting Plaintiff's credibility, the ALJ properly discussed the evidence of record, noting the inconsistencies therein and providing citations therefor.  *Id.*, p. 8-9.

Plaintiff, in his Reply, argues that the records state that he was *trying* to walk 30 minutes per day, 3 days per week, which renders them consistent with his testimony that he could only walk for 15 minutes at a time, and therefore "is an extremely insufficient basis for discrediting his allegations."  Docket No. 18, p. 4.  Plaintiff further argues that the ALJ's failure to state a

reasonable basis for rejecting his testimony mandates that it be accepted as true. *Id.* p. 5.

Plaintiff additionally asserts that his subjective allegations are consistent with, and supported by,

the medical evidence of record, such that the ALJ's failure to find him fully credible constitutes

material error. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective

complaints:

> [S]ubjective allegations of disabling symptoms, including pain,
> cannot alone support a finding of disability...[T]here must be
> evidence of an underlying medical condition *and* (1) there must be
> objective medical evidence to confirm the severity of the alleged
> pain arising from the condition *or* (2) the objectively determined
> medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep.

No. 466, 98th Cong., 2d Sess. 24) (emphasis added); *see also* 20 CFR §§ 404.1529, 416.929

("[S]tatements about your pain or other symptoms will not alone establish that you are

disabled...."); *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon

alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's

allegations...if the subjective allegations, the ALJ's personal observations, and the objective

medical evidence contradict each other.").  Moreover, "allegations of pain...do not constitute a

disability unless the pain is of such a debilitating degree that it prevents an individual from

engaging in substantial gainful activity." *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d

1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 CFR § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ discussed Plaintiff's testimony as follows:

> The claimant testified to the following: he was admitted to the hospital in January 2010 due to congestive heart failure. He testified that he got tired and weak even if he was not doing anything. He stated that he got dizzy when he bent over, and that climbing stairs bothered his breathing, legs, and back. He reported that his heart raced from time-to-time, and that stress aggravated his symptoms. He reported that being in the heat bothered him. He testified that nervousness was a side effect of his medication. He stated that he often could not take his medications because he could not afford them. He reported his day consisted of watching television and "taking it easy." He stated that he could do chores, such as taking out the trash, on a good day. He testified that he could sit for ten to 15 minutes before he had to get up. He reported he could stand for the same amount of time. He stated that he could lift a laundry basket, and could lift a 50-pound bag of dog food on occasion. He stated he would be able to vacuum. He reported he could not lift a chair or television. He stated he could walk for 30 minutes periodically, but could not walk that long now. He reported having 24 bad days per month. He stated he could walk 15 minutes on a bad day. He testified that he could lift two gallons of milk repetitively for one-third of the day, and he could lift [*sic*]. He

> stated if his job was lifting one gallon of milk repetitively
> throughout the day while sitting, for 40 hours a week, he could do a
> job like that.

TR 19.

After discussing the medical and testimonial evidence, the ALJ ultimately determined:

> After careful consideration of the evidence, the undersigned finds
> that the claimant's medically determinable impairment could
> reasonably be expected to cause the alleged symptoms; however,
> the claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not credible to the extent
> they are inconsistent with the above residual functional capacity
> assessment.

*Id.*

As has been demonstrated in the statements of error above, the ALJ's decision addresses

not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly

indicating that these factors were considered. TR 16-22. It is clear from the ALJ's articulated

rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to

rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the

ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the

objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility

determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An

ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference,

particularly because the ALJ is charged with the duty of observing the claimant's demeanor and

credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Sec'y of Health & Human Servs.,* 818

F.2d 461, 463 (6th Cir. 1987)).  Discounting credibility is appropriate when the ALJ finds

contradictions among the medical reports, the claimant's testimony, the claimant's daily activities,

and other evidence.  *See Walters*, 127 F.3d at 531 (*citing Bradley,* 862 F.2d at 1227; *cf King v.*

*Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*,

823 F.2d 918, 921 (6th Cir. 1987)).  If the ALJ rejects a claimant's testimony as not credible,

however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see*

*Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record. S*ee King*, 742 F.2d at

975.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and

reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the

decision not to accord full credibility to Plaintiff's allegations was proper.  Therefore, this claim

fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, that the decision of the Commissioner be

AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

days after service of this Report and Recommendation in which to file any written objections to

this Recommendation with the District Court.  Any party opposing said objections shall have

fourteen (14) days after service of any objections filed to this Report in which to file any response

to said objections.  Failure to file specific objections within fourteen (14) days of service of this

Report and Recommendation can constitute a waiver of further appeal of this Recommendation.

*See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S.

1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.


E. CLIFTON KNOWLES

United States Magistrate Judge